**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRAUN MEDIA** | : | |
| **SERVICES, INC.,** | : | **CIVIL ACTION NO. 1:06-CV-02002** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Kane)** |
| | : | |
| v. | : | |
| | : | |
| **TRANACE J. TAYLOR** | : | |
| **(a/k/a TRACY TAYLOR),** | : | |
| **INDIVIDUALLY, AND** | : | |
| **TANGO PRODUCTIONS, INC.,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Before the Court are motions to stay (Doc. No. 5) and to stay discovery pending mediation and/or arbitration (Doc. No. 14) filed by Defendants Tranace (Tracy) Taylor ("Ms. Taylor") and Tango Productions ("Tango") (collectively "Defendants"). The motions are fully briefed and are ripe for disposition. For the reasons that follow, Defendants' motions will be denied.

**I.    BACKGROUND**[1]

    **A.    Factual background**

The instant dispute focuses on Defendants' role in a business arrangement that went awry between Braun Media Solutions, Inc., ("BMS") and Ms. Taylor's husband and his wholly owned corporation. BMS is a Minnesota corporation that, among other things, assists clients in implementing marketing and distribution programs involving digital media. Ms. Taylor is a

---

[1] Unless otherwise noted, the background material was drawn from Plaintiff's complaint and notice of removal. (Doc. No. 1).

Pennsylvania resident who is an officer of and who holds an ownership interest in Tango, a corporation engaged in the business of filming, producing, editing, and mastering videos in both digital and analog media.  Ms. Taylor's husband, Todd Taylor ("Mr. Taylor"), is the sole owner and officer of Taylor'd Solutions, Inc., ("TSI"), a Pennsylvania corporation through which Mr. Taylor engaged in the business of filming, producing, editing, and mastering videos in both digital and analog media.  Both Tango and TSI operate out of the Taylor residence.

In March 2003, BMS, Mr. Taylor, and TSI entered into an arrangement whereby BMS would purchase the assets of TSI, directly and indirectly assume equipment leases entered into by TSI, and employ Mr. Taylor as BMS's Director of Video Services (these contracts will be collectively referred to as the "March 2003 agreements").  Pursuant to the March 2003 agreements, Mr. Taylor was hired and paid by BMS for his work, and BMS began making payments on the leases for equipment located at TSI's former studio.  BMS additionally built a new production studio for Mr. Taylor at the Taylor residence, enhanced and upgraded the existing equipment there, and purchased new equipment and new music and video licenses to be stored and/or used by Mr. Taylor in the studios at the Taylor residence.  These assumed leases, equipment enhancements and upgrades, newly purchased equipment, and music and video licenses will be collectively referred to as the "BMS assets."

At the time BMS, Mr. Taylor, and TSI entered into the March 2003 agreements, Mr. Taylor and BMS had been working together on a major account, A Beca Academy, Inc., d/b/a Pensacola Christian College ("PCC").  According to BMS, under their employment agreement, Mr. Taylor was the primary contact with PCC and was commissioned on sales to PCC.  In the spring of each year through 2005, BMS provided services in connection with a PCC program,

the PCC Curriculum Update, which generated large revenues and significant gross margin income to BMS. BMS expected to receive the PCC Curriculum Update for 2006, and it had sent Mr. Taylor to meet with PCC at PCC's headquarters to begin planning the program and to firm up commitments for the 2006 work. Instead of receiving the expected orders for the 2006 PCC Curriculum Update, BMS received a request from Mr. Taylor that he be allowed to handle the update on his own or through his wife's company, while still being employed by BMS. This request was denied, and Mr. Taylor resigned from BMS.

After Mr. Taylor's resignation, BMS learned that, "acting on the advice of and with the assistance, encouragement and support of Ms. Taylor and Tango," Mr. Taylor did the following: (1) solicited and placed the 2006 PCC Curriculum Update business with himself or companies with which Mr. Taylor and his wife were affiliated while he was still employed by BMS; (2) "breached his employment agreement with BMS by soliciting, contracting and retaining certain BMS vendors, referral sources and/or strategic allies to help himself – or companies such as Tango . . . – secure and fulfill the 2006 PCC Curriculum Update business;" (3) produced videos while employed with BMS and otherwise directly competed for business with BMS in violation of the March 2003 agreements; and (4) refused to return the BMS assets to BMS.

BMS asserts that during the relevant time period, Defendants were aware of the business relationship between BMS and PCC, BMS's contemplation of and substantial investment in the acquisition of the 2006 PCC Curriculum Update business, and the provisions of the March 2003 agreements between BMS, Mr. Taylor, and TSI. BMS further asserts that Defendants intentionally, wrongfully, and maliciously encouraged Mr. Taylor's breach of his employment agreement with BMS and engaged in unfair competition. Finally, BMS asserts that Defendants

have converted the BMS assets and have been unjustly enriched by the unauthorized possession and/or use of these assets at the expense of BMS.

**B.     Procedural history**

BMS filed a civil action in the District Court of Minnesota against Mr. Taylor and TSI for common-law unfair competition, conversion, and breach of contract based on the above-mentioned events.  (Doc. No. 1-3.)  By stipulation of the parties, the matter was remanded for arbitration before the American Arbitration Association.  (Doc. No. 5-3.)  Mediation is scheduled for December 12, 2006, (Doc. No. 16, at 1), and arbitration is scheduled for hearing in April 2007 (Doc. No. 19, at 8).

BMS filed the instant civil action against Defendants Ms. Taylor and Tango in the Court of Common Pleas of York County, Pennsylvania, on September 6, 2006, asserting claims of interference with actual or prospective contractual relations, unfair competition, conversion, and unjust enrichment.  On October 11, 2006, Defendants removed the action to the Middle District of Pennsylvania, invoking the Court's diversity jurisdiction.

In the motions now before the Court, Defendants urge that the instant suit between Ms. Taylor and Tango should be stayed pending the mediation and arbitration of the Minnesota lawsuit between BMS and Mr. Taylor and TSI.  Defendants assert that the underlying facts of the two cases are the same and that, "[s]hould that forum determine Braun has no cause against Todd Taylor or his company, no further action need be taken in this case."  (Doc. No. 14, at 9.)  According to Defendants, granting a stay or a stay of discovery would be a sound exercise of the Court's discretion, preventing needless discovery expenses and furthering the interests of judicial economy.

**II.    DISCUSSION**[2]

The Court has the inherent power to stay proceedings before it. Landis v. North Am. Co., 299 U.S. 248, 254 (1936). This power to stay is to be used judiciously, and it requires the Court to "weigh competing interests and maintain an even balance." Id. at 255. Only in rare circumstances should the Court compel a litigant to stand aside while another case is determined. See id. Accordingly, the burden on a party requesting a stay is great – the movant "must make out a clear case of hardship or inequity in being required to go forward . . . ." Id.; see CTF Hotel Holdings, Inc. v. Marriot Int'l, Inc., 381 F.3d 131 (3d Cir. 2004) ("The opposing party must state a clear countervailing interest to abridge a party's right to litigate.").

A district court's decision whether to stay a proceeding may be guided by a consideration of the following factors: (1) the identity of the parties and issues in both actions; (2) the adequacy and extent of relief available in the alternative forum; (3) the likelihood of prompt disposition in the alternative forum; (4) the convenience to the parties, counsel, and witnesses; (5) the possibility of prejudice to the party as a result of the stay; and (6) the promotion of judicial efficiency. Balfour v. Gutstein, 547 F. Supp. 147, 148 (E.D. Pa. 1982); Nigro v. Bumberg, 373 F. Supp. 1206, 1212-13 (E.D. Pa. 1974). After due consideration of these factors and the parties' arguments, the Court concludes that a stay is not appropriate in the present case.

The first factor – the identity of the parties and issues – weighs against the Court's entry of a stay. The instant action is between BMS and Defendants Ms. Taylor and Tango, while the

---

[2] The Third Circuit has recognized that "the same logic applies" whether a district court is deciding to stay litigation pending an arbitration or pending the outcome of a suit in another forum. See CTF Hotel Holdings, Inc. v. Marriott Int'l, Inc., 381 F.3d 131, 139-40 (3d Cir. 2004). Accordingly, the Court's consideration of stay cases generally in its discussion of the pending motions is proper.

Minnesota arbitration is between BMS, Mr. Taylor, and TSI. The fact that the parties to the two actions are not the same suggests that a stay is inappropriate. See United Ref. Co. v. Dep't of Energy, 486 F. Supp. 99, 100 (W.D. Pa. 1980) (denying stay motion in part because the parties in the two actions were "not identical"). Defendants highlight that under certain circumstances the district court is empowered to enter a stay of third party litigation that involves common questions of fact which are within the scope of the arbitration agreement. See AgGrow Oils, LLC v. Nat'l Union Fire Ins. Co., 242 F.3d 777, 782-83 (8th Cir. 2001) (opining that a plaintiff should not be allowed to evade its arbitration agreement with the real party in interest by suing that party's surety). In the Court's opinion, however, this is not such a circumstance.

Although both suits arise from the business arrangement that fell apart between BMS, Mr. Taylor, and TSI, the claims presented in each case differ. The Minnesota arbitration focuses on the conduct of Mr. Taylor to determine if he breached his contract, competed unfairly with BMS during and after his resignation, and converted the BMS assets to his own use. The case before this Court focuses on the alleged tortious conduct of Defendants Ms. Taylor and Tango. For example, the question of Defendants' intentional interference with BMS's relationships with Mr. Taylor, TSI, and PCC are not at issue in the arbitration, nor is the arbitration's aim to determine whether Defendants engaged in unfair competition, converted the BMS assets, or were unjustly enriched at BMS's expense. Because the parties and the range of issues differ in the arbitration and the instant case, the first factor weighs against granting a stay. See Legal Asset Funding, LLC v. Veneski, 358 F. Supp. 2d 425, 427 (M.D. Pa. 2005) (concluding that the state and federal actions were not parallel because the parties and issues were different and that, therefore, a stay would be inappropriate).

The second factor – availability of adequate relief in the other forum – likewise weighs against the Court entering a stay. Defendants are not parties to the arbitration, and the Court presumes that they would not consent to be bound by an unfavorable decision in a third-party proceeding. Because they are not parties to the Minnesota arbitration, BMS cannot seek to hold Defendants liable for their own allegedly tortious conduct, nor can the outcome of the Minnesota arbitration provide any kind of relief as against Defendants. The scope of relief afforded by the two forums clearly differs, and the Plaintiff cannot obtain complete relief in either forum alone. See I.J.A., Inc. v. Marine Holdings Ltd., Inc., 524 F. Supp. 197, 199 (E.D. Pa. 1981) (relying, inter alia, on the lack of complete relief available in the other forum in determining that the previously entered stay should be vacated); see also Balfour, 547 F. Supp. at 149 (focusing this portion of its inquiry on whether the other forum could provide the parties with "complete relief").

The third factor – the likelihood of a prompt disposition of the Minnesota lawsuit – weighs neither for nor against the entry of a stay. Mediation is scheduled for December, and arbitration is scheduled for late April 2007. It is unclear from the record whether the Minnesota action is proceeding according to schedule or whether delays are likely to arise.

The next two factors call the Court to consider the convenience of the parties, counsel, and witnesses, and the possibility of prejudice to Plaintiff if a stay were to be entered. In order to establish that the convenience of the parties, counsel, and witnesses will be furthered by a stay, Defendants must show a "pressing need or clear case of hardship or inequity." Balfour, 547 F. Supp. at 149. Defendants cite to the "extra and possibly needless" expense associated with responding to Plaintiff's extensive discovery requests. (Doc. No. 14, ¶ 7.) As discussed above,

this is the only forum specifically considering Defendants' alleged tortious conduct. While the outcome of the Minnesota litigation may affect the instant case, for example by altering the parties' litigation strategies and their valuation of the claims for settlement purposes, ultimately Defendants will need to respond to Plaintiff's claims and Plaintiff's discovery requests concerning their own allegedly tortious conduct. The Court sees no reason to delay discovery into these matters while the conduct of Mr. Taylor and TSI is being evaluated in Minnesota. Rather, Plaintiff should be able to pursue its claims against Defendants in the forum that was available to it without unnecessary delay.

Finally, the promotion of judicial efficiency will not be fostered by a stay. As the Court has noted, the two actions are not identical. Even if the Court were to stay this action and await the resolution of the Minnesota arbitration, Plaintiff's claims based upon Defendants' tortious conduct are properly brought before this Court and may be pursued by Plaintiff in this forum. Moreover, by allowing this case to proceed and permitting discovery now, judicial economy may be furthered because both the Minnesota proceeding and this one will benefit from the discovered information.

In sum, the Court concludes that neither a stay of the case nor a stay of discovery would be appropriate under the present circumstances. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRAUN MEDIA** | : | |
| **SERVICES, INC.,** | : | **CIVIL ACTION NO. 1:06-CV-02002** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Kane)** |
| | : | |
| v. | : | |
| | : | |
| **TRANACE J. TAYLOR** | : | |
| **(a/k/a TRACY TAYLOR),** | : | |
| **INDIVIDUALLY, AND** | : | |
| **TANGO PRODUCTIONS, INC.,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

**AND NOW** this 30th day of November, 2006, upon due consideration, and for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Defendants' motions to stay (Doc. No. 5) and to stay discovery (Doc. No. 14) are **DENIED.**


 s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania